IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>ROYAL CASTLE DEVELOPMENT CORPORATION; SUFFOLK COURT, LLC; SUFFOLK COURT APARTMENTS; MISTY MCMICHAEL (HILLAKER); JOHN AND/OR JANE DOES 1-10; and AMARIONETTE RUTLEDGE, by his mother and Next Friend, ANTIONETTE RUTLEDGE,<br><br>　　　　　　Defendants. | Case No. |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Princeton Excess and Surplus Lines Insurance Company ("PESLIC"), by and through its undersigned counsel, for its Complaint for Declaratory Judgment against Defendants, Royal Castle Development Corporation ("Royal Castle"), Suffolk Court, LLC ("Suffolk LLC"), Suffolk Court Apartments ("Suffolk Apartments"), Misty McMichael ("McMichael"), John and/or Jane Does 1-10 ("Does"), and Amarionette Rutledge, by his mother and Next Friend, Antionette Rutledge ("Rutledge"), alleges as follows:

### NATURE OF THE CASE

1.　　This is an action for declaratory judgment and other relief, brought pursuant to 28 U.S.C. §§ 2201 and 2202, for the purpose of resolving an actual controversy between the parties regarding their respective rights and obligations under a liability policy that PESLIC issued to Royal Castle, among other named insureds, which lists Suffolk Apartments as a property that the named insureds own, rent, or occupy.  In particular, PESLIC seeks a declaration that it owes no defense or indemnity obligation under the subject insurance policy with respect to its insureds'

alleged liability in an underlying civil lawsuit pending in the Circuit Court for the County of Genesee, State of Michigan, styled *Amarionette J. Rutledge, by his mother and Next Friend, Antionette Rutledge v. Suffolk Court Apartments, Mount Morris Township, and Suffolk Court Apartments Managers Misty Hillaker and John or Jane Doe 1-10*, Case No. 18-110663 (the "Underlying Lawsuit").

## THE PARTIES AND CITIZENSHIP

2.  PESLIC is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business in Princeton, New Jersey.  PESLIC is authorized to transact business within the State of Michigan as a surplus lines insurer.

3.  Upon information and belief, Royal Castle is a corporation organized and existing under the laws of the State of Florida, with its principal place of business in North Miami, Florida.  Royal Castle transacts business within the State of Michigan and is believed to be the owner of the Suffolk Apartments complex located at 3000 Suffolk Court, Flushing, Michigan 48433.

4.  Upon information and belief, Suffolk LLC is a Florida limited liability company, with its principal place of business in North Miami, Florida.  Suffolk LLC's sole member, Elliot Stone, is believed to be a resident of the State of Florida.

5.  Suffolk Apartments is an apartment complex located at 3000 Suffolk Court, Flushing, Michigan 48433, which location is identified among several properties owned, rented, or occupied by PESLIC's named insureds.  Suffolk Apartments is not a legal business entity registered with the Michigan Secretary of State and has no legal status under Michigan law. Upon information and belief, Suffolk Apartments was named as a party defendant in the Underlying Lawsuit in error.

6. Upon information and belief, McMichael is a resident of the State of Michigan.

7. Upon information and belief, Does 1-10 were/are managers of the Suffolk Apartments premises at all relevant times and residents of the State of Michigan.

8. Upon information and belief, Rutledge is a resident of the State of Michigan and filed the Underlying Lawsuit in the Circuit Court for the County of Genesee, State of Michigan. PESLIC seeks no separate relief or judgment against Rutledge and, rather, seeks only to bind such defendant to any judgment rendered herein.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action, pursuant to 28 U.S.C. § 1332(a), because complete diversity exists between the parties, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

10. Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to this claim occurred within this district, and the Underlying Lawsuit is pending within this district.

## THE UNDERLYING LAWSUIT

11. On March 21, 2018, Rutledge filed the Underlying Lawsuit. (A true and correct copy of the Complaint, filed March 21, 2018, is attached hereto as Exhibit 1, without exhibits.)

12. Rutledge alleges that Suffolk Apartments is a 120-unit multi-family apartment complex located on the south side of Pierson Road in Mount Morris Township, Genesee County, Michigan.

13. According to the Complaint, Pierson Road is a five-lane highway with no sidewalk on either the north or south side of the street. A driveway allegedly connects Suffolk Road with Pierson Road, forming a T-intersection. The intersection allegedly has no pedestrian

signals, no street crossing signals, no lights, no bridge and no safety device. A Dollar General store is allegedly located on the north side of Pierson Road and is a frequent shopping location for Suffolk Apartments residents.

14. It is alleged in the Complaint that, on October 19, 2017 at 7:30 p.m., Rutledge (a 13-year-old boy) was leaving the Dollar General store to return to his residence at Suffolk Apartments.

15. Rutledge alleges that he crossed Pierson Road, going from the north side south to the driveway of the apartment complex.

16. Rutledge alleges that he stopped in a turn lane to wait for eastbound traffic to clear when he was struck by a driver at a speed of 5-15 mph.

17. According to the Complaint, Suffolk Apartments created and/or maintained a dangerous "T-intersection" that provided no safety devices or safe means of access for pedestrian traffic to enter or leave the apartment complex.

18. It is further alleged that Suffolk Apartments managers fielded complaints regarding the danger to pedestrians and knowingly maintained a hazard located and designed in violation of Michigan Fair Housing Laws.

19. Rutledge alleges that, as a result of these hazardous conditions, he sustained a traumatic brain injury that will require a lifetime of medical treatment and care.

20. In Count I of the Complaint (Premises Negligence against Suffolk Apartments), Rutledge alleges that Suffolk Apartments had full knowledge and notice of the danger to pedestrians through numerous complaints and one or more prior injured pedestrians. Specifically, Rutledge alleges that Suffolk Apartments failed to correct a known danger and was negligent in the design, location, and maintenance of the complex and pedestrian traffic.

4

Rutledge further alleges that, in its designing, constructing, and locating the apartment complex, Suffolk Apartments created a foreseeable danger for the tenants and failed to exercise due care to mitigate risks.

21. In Count II of the Complaint (Statutory Violation as to Suffolk Apartments, McMichael, and John and/or Jane Does 1-10), Rutledge alleges that Suffolk Apartments and its managers violated Michigan law in maintaining the driveway entrance as the only means of ingress/egress from the apartment complex.

22. In Count III (Nuisance In Fact against Suffolk Apartments, McMichael, and John and/or Jane Does 1-10), Rutledge alleges that the design and maintenance of the entrance created unavoidable danger.  Rutledge further alleges there are no provisions for safe pedestrian travel, including sidewalks to mitigate the danger of crossing a five-lane highway.  Rutledge further alleges that Suffolk Apartments and its managers were aware that tenants, including children, crossed the highway and ignored and disregarded prior incidents and complaints.

23. In Count IV (Intentional Nuisance against Suffolk Apartments), Rutledge alleges that the maintenance of an unsafe driveway to enter and exit the complex was intentional. Rutledge claims that, since construction, Suffolk Apartments has maintained an unsafe condition and continues to lease and advertise for new tenants.  Finally, Rutledge alleges that Suffolk Apartments created the dangerous condition in order to gain financial benefit from government-subsidized, rent-paying residents.

24. In Count V (Ordinary Negligence Claim against McMichael and John and/or Jane Doe 1-10), Rutledge alleges that Suffolk Apartments and its managers breached the duty of ordinary and reasonable care by maintaining an unsafe premises.

25. In Count VI (Intentional Nuisance and Nuisance In Fact against Mt. Morris Township), Rutledge alleges that Mt. Morris issued a building permit for Suffolk Apartments in violation of Michigan Fair Housing Laws.

26. By way of relief, Rutledge seeks general damages in an amount to be proven at trial, attorney's fees and costs, and other further relief as the court may deem appropriate.

## PESLIC'S PRELIMINARY CLAIMS-HANDLING

27. PESLIC received notice of the Underlying Lawsuit on or about March 28, 2018.

28. On May 15, 2018, PESLIC, through its third-party claims administrator, Network Adjusters, Inc., sent letters to Royal Castle and McMichael agreeing to provide Suffolk Apartments and McMichael with a defense in the Underlying Lawsuit subject to a complete and ongoing reservation of rights.

29. An actual, present, and justiciable controversy has arisen and now exists between PESLIC, Royal Castle, Suffolk LLC, Suffolk Apartments, McMichael, and Does 1-10 regarding their respective rights, duties, and obligations under the subject PESLIC Policy, including whether PESLIC has any defense or indemnity obligations thereunder based on the facts alleged in the Underlying Lawsuit.

## THE PESLIC POLICY

30. PESLIC issued Policy No. 5GA3GL0000016-00 to Royal Castle and Suffolk LLC, among other named insureds, for the policy period May 31, 2017 to May 31, 2018 (the "PESLIC Policy"). (A true and correct copy of the PESLIC Policy is attached hereto as Exhibit 2.)

31. The PESLIC Policy provides Commercial General Liability insurance under ISO Form CG 00 01 04 13 and contains liability limits of $1 million each occurrence and $2 million general aggregate.

32. The Insuring Agreement of Coverage A under the PESLIC Policy provides the following, in relevant part:

> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
>
> \*   \*   \*
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
> (2) The "bodily injury" or "property damage" occurs during the policy period; and
>
> \*   \*   \*

33. The insurance under Coverage A of the PESLIC Policy does not apply, in relevant part, to:

> **2. Exclusions**
>
> This insurance does not apply to:
>
> **a. Expected Or Intended Injury**
>
> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.
>
> \*   \*   \*

34. The PESLIC Policy contains the following definitions:

> **SECTION V – DEFINITIONS**
>
> 1. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

7

\* \* \*

    **13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

35.    The PESLIC Policy contains the following endorsements:

**LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT**

\* \* \*

> **Project:** *All locations shown on the attached General Liability location schedule. And any location added to the policy after the inception date will be considered part of the General Liability location schedule from the date that the location is effective on the policy.*

This insurance applies only to "bodily injury," "property damage," "personal and advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or
2. The Project shown in the Schedule.

\* \* \*

**EXCLUSION – CONSTRUCTION OR DEVELOPMENT**

The following exclusion is added to paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury and Property Damage Liability** and paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**1. Exclusion**

    **Construction or Development**

    This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" arising directly or indirectly from any "construction or development," including the rendering of or failure to render any professional services by you or on your behalf in any way related to such "construction or development."

    However, this exclusion does not apply to "maintenance or renovation."

**2. Definitions**

    The following definitions are added to **Section V – Definitions**:

    **a.** "Construction or Development" means:

        (1) Any structural addition, or structural alteration other than "maintenance or renovation," to any building, structure or real property;
        (2) Complete or partial construction or demolition of any building or any structure; or

  (3) Site preparation, other than planning or surveying, related to paragraphs 1. or 2. above.

* * *

**KNOWLEDGE OF OCCURRENCE/UNINTENTIONAL FAILURE TO DISCLOSE HAZARDS**

* * *

The following is added to Paragraph **6. Representations in Section IV – Commercial General Liability Conditions:**

**Unintentional Errors and Omissions/Failure to Disclose**

Your failure to disclose all hazards or prior "occurrences" existing as of the inception date of this policy shall not prejudice the coverage afforded by this Coverage Part, provided such failure to disclose all hazards or "occurrence" or offense is not intentional.

## COUNT I – DECLARATORY RELIEF
### (No "Occurrence")

36. PESLIC restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

37. In order to trigger coverage under Coverage A of the PESLIC Policy, Rutledge must seek damages, in relevant part, because of "bodily injury" or "property damage" caused by an "occurrence."

38. The PESLIC Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

39. Based on the allegations in the Complaint, the "bodily injury" allegedly sustained by Rutledge, for which he seeks damages in the Underlying Lawsuit, was not caused by an "occurrence," as defined.

40. PESLIC has no duty to defend or indemnify any insured in connection with the Underlying Lawsuit on this basis.

9

**COUNT II – DECLARATORY RELIEF**
**(Ownership, Maintenance or Use of Designated Premises)**

41. PESLIC restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

42. The PESLIC Policy contains an endorsement titled "Limitation of Coverage to Designated Premises or Project," which provides that the insurance applies, in relevant part, only to "bodily injury" arising out of the ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises.

43. The Schedule refers to those locations set forth in the Declarations of all premises the Named Insured owns, rents, or occupies.

44. 3000 Suffolk Court in Flushing, Michigan is specifically listed among the five premises locations set forth in the Declarations.

45. In this case, the accident allegedly occurred off-site, away from the apartment complex, on Pierson Road.

46. Accordingly, Rutledge's "bodily injury" did not arise out of the ownership, maintenance, or use of the apartment premises, and the insurance does not apply on this basis.

**COUNT III – DECLARATORY RELIEF**
**(Expected or Intended Injury Exclusion)**

47. PESLIC restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

48. The insurance under the PESLIC Policy does not apply to "bodily injury" expected or intended from the standpoint of any insured, or its "employees," patrons, customers, agents or any other person.

49. According to the Complaint, Suffolk Apartments knew of previous injuries that occurred in the same T-intersection and of the inherent dangerous/unsafe condition that was created.

50. Suffolk Apartments is alleged to have knowingly and intentionally constructed the apartment complex such that it did not provide for a safe means for tenant pedestrians to enter or exit the property.

51. Accordingly, even if the Underlying Lawsuit is construed as seeking to impose a legal obligation upon PESLIC's insureds to pay damages because of "bodily injury" caused by an "occurrence," some or all of such damages are excluded from coverage under the PESLIC Policy pursuant to Exclusion a. of Coverage A.

### COUNT IV – DECLARATORY RELIEF
### (Construction or Development Exclusion)

52. PESLIC restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

53. By endorsement, the insurance under the PESLIC Policy does not apply to "bodily injury" arising directly or indirectly from any "construction or development," including the rendering of or failure to render any professional services by the Named Insured or on the Named Insured's behalf in any way related to such "construction or development."

54. Based on the allegations in the Complaint, Rutledge's "bodily injury" arose directly—or at least indirectly—from the "construction or development" of the apartment complex. Indeed, the Complaint expressly ties Suffolk Apartments' negligent failures regarding pedestrian traffic to the overall design and maintenance of the apartment complex.

55. In addition, according to the Complaint, Suffolk Apartments failed to exercise specialized knowledge or skill when designing and planning the apartment complex, which relates in some way to the construction or development of the buildings and structures.

56. Accordingly, even if the Underlying Lawsuit is construed as seeking to impose a legal obligation upon PESLIC's insureds to pay damages because of "bodily injury" caused by an "occurrence," some or all of such damages are excluded from coverage under the PESLIC Policy due to the application of the Construction or Development Exclusion.

## COUNT V – DECLARATORY RELIEF
### (Knowledge of Occurrence/Unintentional Failure to Disclose Hazards)

57. PESLIC restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

58. An endorsement to the PESLIC Policy titled "Exclusion – Knowledge of Occurrence/Unintentional Failure to Disclose Hazards" states, in relevant part, that the Named Insured's failure to disclose all hazards or prior "occurrences" existing as of the inception date of the Policy shall not prejudice the coverage afforded by the coverage part, provided such failure to disclose all hazards or "occurrence" or offense is not intentional.

59. Rutledge alleges in the Complaint that Suffolk Apartments knew of the danger to pedestrians, fielded numerous complaints, and knew of at least one or more pedestrian injuries prior to his injury.

60. Accordingly, even if the Underlying Lawsuit is construed to impose a legal obligation upon Suffolk Apartments to pay damages because of "bodily injury" caused by an "occurrence," some or all of such damages are excluded from coverage to the extent that Suffolk Apartments' failure to disclose prior hazards and occurrences was intentional.

### COUNT VI – DECLARATORY RELIEF
### (Recoupment of Defense Costs)

61. PESLIC restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

62. By letters dated May 15, 2018, PESLIC's third-party administrator advised the insureds of PESLIC's agreement to provide them each with a defense in the Underlying Lawsuit subject to a reservation of rights.

63. The May 15, 2018 letters expressly reserved PESLIC's right to seek reimbursement of the costs incurred in connection with the insureds' defense in the Underlying Lawsuit.

64. PESLIC has incurred, and will continue to incur, legal fees and expenses relating to the defense of the Underlying Lawsuit.

65. To the extent it is later determined that there is no coverage available to the insureds under the PESLIC Policy, PESLIC is entitled to reimbursement of all costs and expenses incurred in PESLIC's defense of the insureds from May 15, 2018 going forward.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Princeton Excess and Surplus Lines Insurance Company respectfully requests that this Court enter judgment in its favor, and against Royal Castle, Suffolk LLC, Suffolk Apartments, McMichael, and Does 1-10 as follows:

(a) Declaring that PESLIC owes no duty to defend or indemnify any purported insureds under the PESLIC Policy with respect to the Underlying Lawsuit;

(b) Declaring that PESLIC is entitled to recoupment of defense costs and expenses incurred on behalf of the purported insureds in the Underlying Lawsuit from May 15, 2018 going forward;

(c) Awarding PESLIC its attorneys' fees, costs, and disbursements in prosecuting this action; and

(d) Granting PESLIC any other and further relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiff Princeton Excess and Surplus Lines Insurance Company hereby demands a trial by jury pursuant to Fed. R. Civ. P. 38(b).

Dated:  June 18, 2018                                  Respectfully submitted,

/s/ Jordon S. Steinway
Jordon S. Steinway
BATESCAREY LLP
191 North Wacker, Suite 2400
Chicago, IL 60606
Telephone:  (312) 762-3169
Email:  jsteinway@batescarey.com

*Counsel for Princeton Excess and Surplus Lines Insurance Company*

13672.196629